**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

NAVIENT SOLUTIONS, LLC,

      Plaintiff,

      v.

DEPARTMENT OF EDUCATION and DR.
MIGUEL CARDONA, Secretary of
Education, in His Official Capacity,

      Defendants.

**Case No.: 1:21-cv-324-TSE-MSN**

**SUPPLEMENTAL ADMINISTRATIVE RECORD**

**VOLUME 3 (Pages 1486-517)**

### NAVIENT V. DEPARTMENT OF EDUCATION
#### Case No. 21-CV-00324
### SUPPLEMENTAL ADMINISTRATIVE RECORD

| Document Description | Bates No. |
|---|---|
| Final Audit Determination of Federal Student Aid Letter from Patricia Trubia, Director, Financial Institution Oversight Service, Federal Student Aid, to John Remondi, President and Chief Operating Officer, Sallie Mae, Inc., dated September 25, 2013 | 1345-71 |
| Affidavit of Jason Wheeler dated November 24, 2015 | 1372-78 |
| Affidavit of Sheila M. Ryan-Macie dated March 24, 2015 | 1379-476 |
| Letter from Robert Evans, former Director of Policy and Development, U.S. Department of Education, to Sheila Ryan-Macie, dated March 18, 2014 | 1477-78 |
| Affidavit of John (Jack) Remondi, dated September 22, 2016 | 1479-81 |
| NCHER Website Interest & Special Allowance Rate Information, Historic 91-Day T-Bill Rates | 1482-85 |
| 1993 Trust Agreement | 1486-517 |
| Official Statement Relating to Nellie Mae 1993 Series G (Aug. 1, 1993) | 1518-94 |
| Affidavit of Mark L. Heleen dated September 23, 2016 | 1595-97 |
| Navient Responses to OIG Questions of December 14, 2007 | 1598-600 |
| Letter from Robert S. Lavet, General Counsel, Sallie Mae, to Theresa Shaw, U.S. Department of Education, dated February 15, 2007 | 1601 |
| Affidavit of Jane Roig dated November 11, 2016 | 1602-03 |
| Emails concerning Freedom of Information Act dated April 26, 2017 and May 15, 2017 | 1604-07 |
| Letter from Theresa Shaw to Thomas J. Fitzpatrick dated January 24, 2007 | 1608-11 |
| Final Audit Report, Special Allowance Payments to Sallie Mae's Subsidiary, Nellie Mae, for Loans Funded by Tax-Exempt Obligations, dated August 2009 | 1612-75 |
| Respondent Navient Corporation's Request for Review of Final Audit Determination, dated July 27, 2016 | 1676-737 |
| Brief in Support of Navient Corporation's Appeal of the Final Audit Determination Issued by the Office of the Inspector General of the Department of Education, dated September 27, 2016 | 1738-83 |
| Navient Corporation's Reply Brief in Support of Appeal of Final Audit Determination, dated November 23, 2016 | 1784-816 |

| | |
|---|---|
| Transcript of March 30, 2017, Oral Argument | 1817-2018 |
| Navient Corporation's Supplemental Brief, dated May 19, 2017 | 2019-40 |
| Hearing Official's Initial Decision, dated March 7, 2019 | 2041-60 |
| DCL 93-L-161 | 2061-77 |
| DCL 93-L-163 | 2078-81 |
| DCL 96-L-186 | 2082-87 |
| DCL FP-06-15 | 2088-93 |
| DCL FP-07-01 | 2094-99 |
| DCL FP-07-06 | 2100-38 |
| Brief in Support of Navient Corporation's Appeal of the Hearing Official's Initial Decision, dated April 8, 2019 | 2139-91 |
| Motion for Leave To File a Reply in Support of Navient Corporation's Appeal of the Hearing Official's Initial Decision | 2192-201 |
| Navient Visuals from Oral Argument before the Department of Education Office of Hearings and Appeals, dated March 30 2017 | 2202-09 |
| Brief in Support of Federal Student Aid's Final Audit Determination, dated October 28, 2016 | 2210-54 |
| Supplemental Brief in Support of Federal Student Aid's Final Audit Determination, dated May 19, 2017 | 2255-76 |
| Brief in Response to Navient Corporation's Appeal of Hearing Official's Initial Decision, dated May 3, 2018 | 2277-318 |
| Motion for Leave To File a Sur-Reply Brief in Response to Reply Brief in Support of Navient Corporation's Appeal of Hearing Official's Initial Decision), dated May 31, 2019 | 2319-35 |

Execution Copy

# TRUST AGREEMENT

between

## THE NEW ENGLAND EDUCATION LOAN MARKETING CORPORATION

and

## THE FIRST NATIONAL BANK OF BOSTON, as Trustee

Dated as of March 1, 1993

Providing for the Issuance of

$103,300,000
The New England Education Loan Marketing Corporation
Student Loan Refunding Bonds, 1993 Series A

# TABLE OF CONTENTS

## ARTICLE I
### INTRODUCTION AND DEFINITIONS

Section 1.1.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1
Section 1.2.   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

## ARTICLE II
### AUTHORIZATION OF BONDS

Section 2.1.   Principal Amount of the 1993 Series A Bonds . . . . . . . . . . . . . . . . . .   4
Section 2.2    Purposes of the 1993 Series A Bonds . . . . . . . . . . . . . . . . . . . . . . .   4
Section 2.3.   Date, Maturities, Interest Rate and Interest Payments for the 1993
               Series A Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
Section 2.4.   Book-Entry System for the 1993 Series A Bonds . . . . . . . . . . . . . . .   4
Section 2.5.   1993 Series A Bond Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
Section 2.6.   Additional Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
Section 2.7.   Execution and Authentication of Bonds; Validity of Signatures . . . . . . . .   8
Section 2.8.   Redemption of 1993 Series A Bonds . . . . . . . . . . . . . . . . . . . . . . . .   8
Section 2.9.   Transfer of Bonds; Exchange of Bonds . . . . . . . . . . . . . . . . . . . . . .   9
Section 2.10.  Book of Registry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10
Section 2.11.  Mutilated, Lost, Stolen or Destroyed Bonds . . . . . . . . . . . . . . . . . . .   10
Section 2.12.  Disposition and Destruction of Bonds . . . . . . . . . . . . . . . . . . . . . . .   11

## ARTICLE III
### DISPOSITION OF 1993 Series A BOND PROCEEDS

Section 3.1.   Disposition of Proceeds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
Section 3.2.   Covenants Regarding Prior Bonds . . . . . . . . . . . . . . . . . . . . . . . . . .   12

## ARTICLE IV
### PAYMENT OF BONDS

Section 4.1.   Payments by the Corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
Section 4.2.   Payment by the Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
Section 4.3.   Obligation Unconditional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
Section 4.4.   Unclaimed Moneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

## ARTICLE V
### COVENANTS OF THE CORPORATION

Section 5.1.   Tax Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
Section 5.2.   Plan for Doing Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
Section 5.3.   Personnel and Servicing of Programs . . . . . . . . . . . . . . . . . . . . . . .   14
Section 5.4.   Compliance with Conditions Precedent . . . . . . . . . . . . . . . . . . . . . .   14

Section 5.5.   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Section 5.6.   Waiver of Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## ARTICLE VI
## SUPPLEMENTAL AGREEMENTS

Section 6.1.   Supplemental Agreements Effective Upon Filing With the Trustee . . . . . 15
Section 6.2.   Supplemental Agreements Effective Upon Consent of Trustee . . . . . . 15
Section 6.3.   Supplemental Agreements Effective Upon Consent of Bondowners . . . . . 16
Section 6.4.   General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## ARTICLE VII
## AMENDMENTS

Section 7.1.   Mailing of Notice of Amendment . . . . . . . . . . . . . . . . . . . . . . . 17
Section 7.2.   Powers of Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 7.3.   Consent of Bondowners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Section 7.4.   Exclusion of Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## ARTICLE VIII
## DEFAULTS AND REMEDIES

Section 8.1.   Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Section 8.2.   Acceleration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Section 8.3.   Application of Moneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Section 8.4.   Suits at Law or in Equity; Direction of Action by Bondowners . . . . . . 21
Section 8.5.   Suits by Individual Bondowners . . . . . . . . . . . . . . . . . . . . . . . . . 22
Section 8.6.   Remedies Not Exclusive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Section 8.7.   Waivers of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## ARTICLE IX
## CONCERNING THE TRUSTEE

Section 9.1.   Responsibility of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Section 9.2.   Evidence on Which Trustee May Act . . . . . . . . . . . . . . . . . . . . . . 24
Section 9.3.   Compensation; Indemnity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Section 9.4.   Permitted Acts and Functions . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Section 9.5.   Resignation of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Section 9.6.   Removal of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Section 9.7.   Appointment of Successor Trustee . . . . . . . . . . . . . . . . . . . . . . . 25
Section 9.8.   Transfer of Rights to Successor Trustee . . . . . . . . . . . . . . . . . . . . 25
Section 9.9.   Merger or Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Section 9.10.  Adoption of Authentication . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Section 9.11.  Evidence of Signatures of Bondowners and Ownership of Bonds . . . . . . 26

## ARTICLE X
## MISCELLANEOUS PROVISIONS

Section 10.1. Conflict . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section 10.2. Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Section 10.3. Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TRUST AGREEMENT

## ARTICLE I

## INTRODUCTION AND DEFINITIONS

Section 1.1.   <u>Introduction</u>.  This Trust Agreement (hereinafter referred to as the "Agreement") is entered into as of March 1, 1993 by The New England Education Loan Marketing Corporation (with its successors, the "Corporation") a nonprofit corporation duly organized and existing under Sections 1 through 12A of Chapter 356 of the Acts of 1982 of The Commonwealth of Massachusetts, as amended (the "Act") and The First National Bank of Boston, a national banking association, as Trustee (with its successors, the "Trustee").

This Trust Agreement provides for the issue of the 1993 Series A Bonds for the purpose of refunding the 1988 Issue I Bonds and the 1988 Issue II Bonds and for the issue of Additional Bonds from time to time for purposes authorized by the Act as now in effect or as may hereafter be amended from time to time.

In consideration of the mutual agreements contained in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, the Corporation and the Trustee agree as set forth herein for their own benefit and the benefit of the Bondowners.

Section 1.2.   <u>Definitions</u>.  (a) <u>Words</u>.  The following terms shall have the following meanings, unless the context otherwise requires:

(1)     "Additional Bonds" means bonds of the Corporation issued pursuant to Section 2.6 of this Agreement.

(2)     "Authorized Officer" means the chairman of the Board of Directors, the president, any vice president or the treasurer and, in the case of any act to be performed or duty to be discharged, any other director, officer or employee of the Corporation then authorized to perform such act or discharge such duty.

(3)     "Bondowners", "owners" or words of similar import means the registered owners of the Bonds from time to time as shown in the bond registration books of the Corporation, except that wherever appropriate the term "owners" shall mean the owners of the Bonds for federal income tax purposes.

(4)     "Bonds" means the 1993 Series A Bonds, any Additional Bonds and any bond or bonds duly issued in exchange or replacement therefor.

(5)     "Bond Counsel" means an attorney or firm of attorneys of nationally recognized standing in the field of law relating to municipal, state and public agency financing, selected by the Corporation and satisfactory to the Trustee.

(6)     "Business Day" means each day of the year except Saturdays, Sundays and other days on which the Trustee, banks located in the State of New York or the Commonwealth, or the New York Stock Exchange are permitted or authorized to be closed.

(7)     "Commonwealth" means The Commonwealth of Massachusetts.

(8)     "Government or Equivalent Obligations" means (i) obligations issued or guaranteed by the United States; (ii) certificates evidencing ownership of the right to the payment of the principal of and interest on obligations described in clause (i), provided that such obligations are held in the custody of a bank or trust company in a special account separate from the general assets of such custodian; and (iii) any open-end or closed-end management type investment company or trust registered under 15 U.S.C. §80(a)-1 et seq., provided that the portfolio of such investment company or trust is limited to obligations described in clause (i) and repurchase agreements fully collateralized by such obligations, and provided further that such investment company or trust shall take custody of such collateral either directly or through a custodian.

(9)  Except in the Bonds, "here" in such words as "hereby," "herein," "hereof" or "hereunder" means this Agreement as a whole rather than the particular section, subsection, paragraph, subparagraph, clause or subclause in which the word appears; and in the Bonds it refers thereto.

(10)     "Higher Education Act" means the Higher Education Act of 1965, as amended, and the regulations duly promulgated from time to time thereunder.

(11)  "IRC" means the Internal Revenue Code of 1986, as it may be amended from time to time.

(12)  "1988 Issue I Bank" means The Sanwa Bank, Limited, New York Branch.

(13)  "1988 Issue I Bonds" means the Corporation's $60,000,000 Student Loan Revenue Bonds, 1988 Issue I dated July 29, 1988.

(14)  "1988 Issue I Letter of Credit" means Irrevocable Transferable Letter of Credit No. 662/259/98538 dated November 29, 1988, as amended, issued in favor of the 1988 Issue I Trustee by the 1988 Issue I Bank.

(15)  "1988 Issue I Trustee" means The First National Bank of Boston, as trustee under a Trust Indenture dated as of July 1, 1988, as amended and supplemented, between the Corporation and The First National Bank of Boston, as trustee.

(16)  "1988 Issue II Bank" means Union Bank of Switzerland, New York Branch.

(17)  "1988 Issue II Bonds" means the Corporation's $47,395,000 Student Loan Revenue Bonds, 1988 Issue II dated December 27, 1988.

(18)  "1988 Issue II Letter of Credit" means the Irrevocable Letter of Credit No. 84912 dated March 16, 1989 issued in favor of the 1988 Issue II Trustee by the 1988 Issue II Bank.

(19)  "1988 Issue II Trustee" means The First National Bank of Boston, as trustee under a Trust Indenture dated as of December 1, 1988, as amended and supplemented, between the Corporation and The First National Bank of Boston, as trustee.

(20)   "1993 Series A Bonds" means the $103,300,000 The New England Education Loan Marketing Corporation Student Loan Refunding Bonds, 1993 Series A, or any bond or bonds duly issued in exchange or replacement therefor.

(21)   "Outstanding," when used to modify Bonds, refers to Bonds issued under this Agreement, excluding:  (i) Bonds which have been exchanged or replaced; (ii) Bonds which have been paid; (iii) Bonds which have become due and for the payment of which moneys have been duly provided; and (iv) Bonds for which there have been irrevocably set aside sufficient funds, or Government or Equivalent Obligations described in clause (i) or (ii) of Paragraph 1.2(a)(8) bearing interest at such rates, and with such maturities as will provide sufficient funds, to pay or redeem them, provided, however, that if any such Bonds are to be redeemed prior to maturity, the Corporation shall have taken all action necessary to redeem such Bonds and notice of such redemption shall have been duly mailed in accordance with this Agreement or irrevocable instructions so to mail shall have been given to the Trustee.

(22)   "Student Loan" means any loan made pursuant to the Higher Education Act to assist any eligible student attend any eligible institution of post-secondary education.

(23)   "Tax-Exempt Bond" means any Bond issued hereunder which when issued was accompanied by an opinion of Bond Counsel to the effect that interest on such Bond is excluded from gross income for federal income tax purposes.

(b)   Number and Gender.  Wherever appropriate (1) the singular and plural forms of words and (2) words of different gender shall, within those respective classifications, be deemed interchangeable.

(c)   Use of Examples.  When a condition, class, category, circumstance or other concept is described in general terms herein and a list of possible examples of components of what has been described generally is associated with that description, and regardless of whether the words "include" or "including" or the like are also used, the listing shall be deemed illustrative only and shall not be construed as excluding other possible examples or components or as otherwise limiting the generality of the description in any way.

# ARTICLE II

## AUTHORIZATION OF BONDS

**Section 2.1.**   <u>Principal Amount of the 1993 Series A Bonds</u>.   The issuance of the 1993 Series A Bonds is hereby authorized in the aggregate principal amount of $103,300,000.  The 1993 Series A Bonds shall be issued in denominations of $5,000 or any multiple thereof.

**Section 2.2**   <u>Purposes of the 1993 Series A Bonds</u>.   The purposes for which the 1993 Series A Bonds are being issued are (a) to pay certain costs of issuance, (b) to provide for the reimbursement of the 1988 Issue I Bank for amounts drawn on the 1988 Issue I Letter of Credit to pay the redemption price of the 1988 Issue I Bonds on or before June 2, 1993, and (c) to provide for the reimbursement of the 1988 Issue II Bonds for amounts drawn on the 1988 Issue II Letter of Credit to pay the redemption price of the 1988 Issue II Bonds on or before June 2, 1993.

**Section 2.3.**   <u>Date, Maturities, Interest Rate and Interest Payments for the 1993 Series A Bonds</u>.   The 1993 Series A Bonds shall be dated March 1, 1993 and mature on July 1, 2005.  The 1993 Series A Bonds shall bear interest at the rate of five and seventy hundredths percent (5.70%) per annum from March 1, 1993, payable on January 1, 1994 and semiannually on each January 1 and July 1 thereafter.

**Section 2.4.**   <u>Book-Entry System for the 1993 Series A Bonds</u>.   The 1993 Series A Bonds will be issued by means of a book-entry system, with bond certificates immobilized at The Depository Trust Company, New York, New York ("DTC").  Transfer of ownership of the 1993 Series A Bonds, if and for as long as DTC acts as securities depository therefor, shall be made only through DTC and its participants in accordance with the rules and regulations specified by DTC.  If and for as long as DTC acts as securities depository therefor, notices of redemption of the 1993 Series A Bonds or any portion thereof shall be sent to DTC by registered or certified mail not less than thirty days nor more than sixty days prior to the date fixed for redemption.

In the event that (a) DTC determines not to continue to act as securities depository for the 1993 Series A Bonds or (b) the Corporation determines that continuation of the book-entry system of evidence and transfer of ownership of the 1993 Series A Bonds would adversely affect the interests of the beneficial owners of the 1993 Series A Bonds, the Corporation will discontinue the book-entry system with DTC.  If the President or Treasurer of the Corporation fails to identify another qualified depository to replace DTC, the Trustee will at the direction of the President or Treasurer authenticate and deliver replacement 1993 Series A Bonds in the form of fully registered certificates with such modifications as the President or Treasurer may deem necessary or appropriate to reflect the fact that the 1993 Series A Bonds are no longer immobilized at a securities depository.

The President and Treasurer of the Corporation are each authorized to make such representations and enter into such agreements as either of them deems necessary and appropriate in furtherance of the provisions of this section.

Section 2.5.   <u>1993 Series A Bond Form</u>.  The 1993 Series A Bonds shall be in substantially the following form:

R-                                                                                                          $

## THE NEW ENGLAND EDUCATION LOAN MARKETING CORPORATION

### Student Loan Refunding Bonds, 1993 Series A

| Interest Rate | Maturity Date | CUSIP | Original Issue Date |
|---|---|---|---|
| 5.70% | July 1, 2005 | 643897AA9 | March 1, 1993 |

REGISTERED OWNER:

PRINCIPAL AMOUNT:                                             DOLLARS

The New England Education Loan Marketing Corporation, (the "Corporation"), a corporation duly created and existing under Sections 1 through 12A of Chapter 356 of the Acts of 1982 of The Commonwealth of Massachusetts, as amended (the "Act"), for value received, promises to pay to the Registered Owner of this bond or registered assigns the Principal Amount specified above, in lawful money of the United States of America, on the Maturity Date unless this bond is called for earlier redemption, upon presentation and surrender hereof, with interest (calculated on the basis of a 360-day year of twelve 30-day months) at the Interest Rate per annum, payable on July 1, 1993 and semiannually thereafter on January 1 and July 1 of each year (each, an "Interest Payment Date") until the Principal Amount is paid or has been duly provided for.  This bond will bear interest from the most recent Interest Payment Date to which interest has been paid or, if no interest has been paid, from the Original Issue Date.

This bond is the only instrument representing an issue of $103,300,000 aggregate principal amount issued by the Corporation (the "Bonds") pursuant to the Act and a Trust Agreement dated as of March 1, 1993 (the "Agreement") between the Corporation and The First National Bank of Boston, as Trustee (the "Trustee") for the purpose of refunding its $60,000,000 Student Loan Revenue Bonds, 1988 Issue I and its $47,395,000 Student Loan Revenue Bonds, 1988 Issue II.  The Bonds are issuable only in fully registered form in the denomination of five thousand dollars ($5,000) or any multiple thereof.  Reference is made to the Agreement for a description of the rights, limitations of rights, duties, obligations and immunities of the Corporation, the Trustee and the bondowners, including the issue of additional bonds under the Agreement, the order of payment in the event of insufficient funds and restrictions on the rights of the bondowners to bring suit.

The Bonds are being issued by means of a book entry system, with bond certificates immobilized at The Depository Trust Company, New York, New York ("DTC") evidencing ownership of the bonds in principal amounts of $5,000 or multiples thereof, and with transfers of beneficial ownership effected on the records of DTC and its participants pursuant to rules and procedures established by DTC.  Bond certificates are not available for distribution to the public.  The principal or redemption price, if any, of and interest on this bond are payable by the Trustee in clearing house funds to the Registered Owner of this bond, as nominee of DTC.  Transfer of principal, redemption price, if any, and interest payments to participants of DTC is the responsibility of DTC; transfer of principal, redemption price, if any, and interest payments to beneficial owners by participants of DTC will be the responsibility of such participants and other nominees of beneficial owners. Neither the Corporation nor the Trustee is responsible or liable for maintaining, supervising or reviewing the records maintained by DTC, its participants or persons acting through such participants.

In the event that (a) DTC determines not to continue to act as securities depository for the Bonds or (b) the Corporation determines that continuation of the book entry system of evidence and transfer of ownership would adversely affect the interests of the beneficial owners of the Bonds, the Corporation will discontinue the book entry system with DTC.  If the Corporation fails to identify another qualified securities depository to replace DTC, the Corporation will execute and the Trustee will authenticate and deliver replacement Bonds in the form of fully registered certificates with such changes as may be necessary to reflect that the Bonds are no longer in the book entry system.

This bond is transferable only upon the books of the Corporation which shall be kept for such purpose by the Trustee.  This bond may not be transferred or exchanged in a manner which would involve the delivery of bond certificates to the beneficial owners of bonds unless the book entry system has been discontinued by the Corporation in accordance with the preceding paragraph, in which case replacement bonds may be issued in accordance with law and such procedures as the Corporation shall deem appropriate.

This bond is redeemable prior to maturity as a whole or in part on any Interest Payment Date at a redemption price equal to 100% of the principal amount redeemed plus accrued interest to the redemption date upon certification by the Corporation to the Trustee that there has occurred a change of law that imposes unreasonable burdens or excessive liabilities on the Corporation in administering and maintaining its student loan program.

In the event this bond is called for redemption, notice will be sent by registered mail not more than sixty (60) days nor less than thirty (30) days prior to the redemption date to the Registered Owner, as nominee of DTC.  It will be the responsibility of DTC and its participants to give notice of the redemption to beneficial owners of this bond.  Failure to mail notice to the registered owner of any other Bond, any defect in the notice to such an owner, or failure by DTC and its participants to provide notice of redemption to the beneficial owners of this bond will not affect the redemption of this bond.  Notice of redemption having been duly given, this bond, or the portion called for redemption, will become due and payable on the redemption date at the applicable redemption price and,

moneys for the redemption having been deposited with the Trustee, from and after the date fixed for redemption interest on this bond, or such portion, will no longer accrue.

Portions of the Principal Amount of this bond in the amount of five thousand dollars ($5,000) or any multiple thereof may be redeemed.  In the event of such a partial redemption, the identity of the beneficial owners whose beneficial interests in this bond shall be redeemed and the amount of any such redemption shall be determined by DTC and its participants by lot in such manner as DTC and its participants shall deem appropriate.  If less than all of the Principal Amount is to be redeemed, upon surrender of this bond to the Trustee there will be issued to the Registered Owner, without charge, a new Bond for the unredeemed principal sum.

This bond will not be valid unless the Certificate of Authentication has been signed by the Trustee.

THE NEW ENGLAND EDUCATION LOAN
MARKETING CORPORATION

By:_____
                     Treasurer

(Seal)

Attest:

_____
        Clerk


CERTIFICATE OF AUTHENTICATION

This bond is one of the Bonds described in the Agreement.

Date of
Registration:

THE FIRST NATIONAL BANK OF BOSTON, Trustee

By:_____
                Authorized Signatory


Section 2.6.   Additional Bonds.  (a)  General.  The Corporation may issue Additional Bonds to refund Bonds previously issued hereunder or for any other purpose permitted by the Act.

(b)     Supplemental Agreement.  Prior to the initial delivery of any issue of Additional Bonds the Corporation and the Trustee shall enter into a supplemental Trust Agreement providing for the details of the Additional Bonds, including the application of the proceeds thereof.  The supplemental Trust Agreement may amend any other provision of this Agreement, provided it will not have a material adverse effect upon the security for the Outstanding Bonds other than that implicit in the authorization of Additional Bonds.

(c)     Delivery of Additional Bonds.  No Additional Bonds shall be delivered by the Trustee unless there shall have been filed with the Trustee:

        (i)           an original executed counterpart of the supplemental Trust Agreement required by Subsection 2.6(b);

        (ii)        the final approving opinion of Bond Counsel delivered in connection with such Additional Bonds; and

        (iii)      confirmation of the ratings on any Outstanding Bonds by Moody's Investors Service, Inc.

Section 2.7.   Execution and Authentication of Bonds; Validity of Signatures.  Each Bond shall be executed on behalf of the Corporation by the manual or facsimile signature of the Corporation's President or Treasurer and shall have impressed or imprinted thereon, by facsimile or otherwise, the official seal of the Corporation, and shall be attested with the manual or facsimile signature of the Corporation's Clerk.  Each Bond shall be authenticated by the manual signature of an authorized officer of the Trustee.  Only such of the Bonds as shall bear thereon a certificate of authentication and registration manually executed by an authorized officer of the Trustee, shall be valid or obligatory for any purpose.

In case any person who shall have executed, authenticated or registered any of the Bonds, whether manually or by facsimile, shall die or cease to be the person authorized to execute, authenticate or register the Bonds before the Bonds so executed, authenticated or registered by such person shall have been actually issued and delivered, such Bonds shall be valid nevertheless, and may be issued with the same effect as though the person who had so executed, authenticated or registered such Bonds had not died or ceased to be such authorized person.

Section 2.8.   Redemption of 1993 Series A Bonds.

(a)     Extraordinary Redemption.  The 1993 Series A Bonds are subject to extraordinary redemption prior to maturity as a whole or in part on any interest payment date at a redemption price equal to 100% of the principal amount being redeemed plus accrued interest to the redemption date in the event such action becomes necessary because of a change of law that imposes unreasonable burdens or excessive liabilities on the Corporation in administering and maintaining its Student Loan program, as evidenced in each case by the filing with the Trustee of a certificate of an Authorized Officer stating that such event has occurred, and providing instructions regarding the redemption of 1993 Series A Bonds pursuant to this subsection, including specification of the principal amount of 1993 Series A

Bonds to be redeemed and of the redemption date (which date shall not be earlier than forty-five (45) days after delivery of the certificate).

(b)   Selection of Bonds.  If the Book-Entry System is no longer in effect and less than all of the 1993 Series A Bonds Outstanding are to be redeemed, the Trustee shall select the 1993 Series A Bonds, or portions thereof in authorized denominations, to be redeemed by lot in the manner the Trustee deems appropriate.

(c)   Notice of Redemption.  When 1993 Series A Bonds are to be redeemed, the Trustee shall give notice to Bondowners in the name of the Corporation as provided in the form of Bond and this subsection, which notice shall identify the 1993 Series A Bonds or portions thereof to be redeemed and state the date fixed for redemption and the place or places of payment of the redemption price.  The notice shall further state that on such date there shall become due and payable upon each 1993 Series A Bond or portion thereof to be redeemed the redemption price thereof, together with interest accrued to the redemption date, that money available therefor having been deposited with the Trustee, from and after such date, interest thereon shall cease to accrue and that the 1993 Series A Bonds or portions thereof called for redemption shall cease to be entitled to any benefit under this Agreement except the right to receive payment of the redemption price.  Failure to mail notice to a particular Bondowner, or any defect in the notice to such Bondowner, shall not affect the redemption of any other Bond.

In addition to the notice of redemption set forth above and in the 1993 Series A Bonds, further notice shall be given by the Trustee as set out in the next sentence, but no defect in said further notice nor any failure to give all or any portion of such further notice shall in any manner defeat the effectiveness of a call for redemption if notice thereof is given as set forth in the Bonds.  Each further notice of redemption shall be sent at least 35 days prior to the redemption date by registered or certified mail or overnight delivery service to at least two national information services that disseminate notices of redemption of obligations like the 1993 Series A Bonds.

Section 2.9.   Transfer of Bonds; Exchange of Bonds.  Any Bond may be transferred upon the books of registry maintained pursuant to Section 2.10 hereof, by the person in whose name it is registered, in person or by its duly authorized attorney, upon surrender of such Bond to the Trustee for cancellation, accompanied by a written instrument of transfer duly executed by the registered owner in person or by its duly authorized attorney, with signatures guaranteed, in a manner satisfactory to the Trustee.

Whenever any Bond shall be surrendered for transfer, the Corporation shall execute and the Trustee shall authenticate and deliver, at the principal corporate trust operations office of the Trustee (or send by first class mail to the new Bondowner at the new Bondowner's request, risk and expense), registered in the name or names of the transferee or transferees, a new duly executed Bond or (to the extent of authorized denominations) two or more new duly executed Bonds of the same date, issue, class and aggregate principal amount, and bearing interest at the same rate, as the Bond being surrendered.

To the extent of authorized denominations, any Bond or Bonds may be surrendered and exchanged at the principal corporate trust operations office of the Trustee for a Bond or Bonds of the same date, maturity date and issue, bearing interest at the same rate and of like aggregate principal amount. The Corporation shall execute and the Trustee shall authenticate and deliver the Bonds issued upon such exchange and shall deliver the same at the principal corporate trust operations office of the Trustee (or send the same by first class mail to the owner thereof at the new Bondowner's request, risk and expense).

All exchanges and transfers of Bonds pursuant to this Section 2.9 shall be made without expense to the Bondowner, except that the Trustee shall require the payment by the Bondowner requesting such transfer or exchange of any tax, fee or other governmental charge required to be paid with respect to such transfer or exchange. All Bonds surrendered pursuant to this Section 2.9 shall be canceled.

No exchanges or transfer of any Bond shall be required to be made during the forty-five (45) days next preceding any redemption date nor during the period between the Record Date (as defined in Section 4.2) and an interest payment date.

Section 2.10. Book of Registry. At all times while any Bond remains Outstanding, the Trustee shall keep or cause to be kept books of registry for the registration and transfer of Bonds at its principal corporate trust operations office. Upon presentation of any Bonds to the Trustee, it shall transfer, under such reasonable regulations as the Trustee may prescribe, such Bonds on such books of registry as hereinabove set forth. Such books of registry shall at all reasonable times be open for inspection by the Corporation or its duly authorized agents or representatives.

The Corporation and the Trustee may treat the registered owner of any Bond as the absolute owner of such Bond for the purpose of receiving payment of the principal of and interest on such Bond and for all other purposes whatsoever and the Corporation and the Trustee shall not be affected by any notice to the contrary.

Section 2.11. Mutilated, Lost, Stolen or Destroyed Bonds. In case any Bond shall at any time become mutilated in whole or in part, or is destroyed, lost or stolen, the Corporation shall cause to be executed and delivered at the principal corporate trust operations office of the Trustee (or send by first class mail to the owner thereof at the such owner's request, risk and expense), a new Bond of the same date, maturity date, issue, and bearing interest at the same rate and of like principal amount as the Bond so mutilated, destroyed, lost or stolen, in exchange and substitution for and upon the surrender for cancellation of such mutilated Bond, or in lieu of or in substitution for such destroyed, lost or stolen Bond. In any such event the applicant for the issuance of a substitute Bond shall file with the Trustee evidence or proof satisfactory to the Trustee of the mutilation, destruction, loss or theft of the original Bond, and proof of ownership thereof, shall furnish the Corporation and the Trustee with security and indemnity satisfactory to the Corporation and the Trustee, and shall comply with such other reasonable rules as the Corporation and the Trustee may prescribe. Any duplicate Bond issued under the provisions of this Section 2.11 in exchange and substitution for any mutilated or in substitution for any

allegedly destroyed, lost or stolen Bond, shall be entitled to the identical benefits under this Agreement as was the original Bond in lieu of which such duplicate Bond is issued.

Notwithstanding the foregoing provisions of this Section 2.11 as to the issuance of duplicate or replacement Bonds, if any such mutilated, destroyed, lost or stolen Bond has matured, at the option of the Corporation or the Trustee, payment of the amount due thereon may be made without the issuance of any duplicate or replacement Bond upon receipt of like evidence, indemnity, security and expenses and the surrender for cancellation of any such mutilated, destroyed, lost or stolen bond and upon such other conditions as the Corporation or the Trustee may prescribe.

All mutilated Bonds surrendered to the Trustee for substitution for new Bonds pursuant to this Section 2.11 shall be canceled by the Trustee.

All expenses incurred by the Corporation or the Trustee for providing any duplicate or replacement Bond shall be paid by the owner thereof.

Section 2.12. <u>Disposition and Destruction of Bonds</u>.  All Bonds surrendered to the Trustee for payment, or surrendered to the Trustee for transfer, exchange, or substitution in accordance with Section 2.9, shall be canceled by the Trustee upon such payment, transfer, exchange or substitution, as the case may be.  Whenever in this Agreement provision is made for the cancellation of any Bonds, the canceled Bonds shall be delivered by the Trustee to the Corporation or as the Corporation may direct.  Upon the written request of the Corporation, the Trustee may, however, in lieu of such cancellation and delivery, destroy such Bonds to the extent permitted by law.  If the Trustee shall destroy any Bonds, it shall deliver a certificate of such destruction to the Corporation at least annually.

## ARTICLE III

## DISPOSITION OF 1993 Series A BOND PROCEEDS

Section 3.1.   <u>Disposition of Proceeds</u>.  Upon delivery of the 1993 Series A Bonds the proceeds shall be applied as follows:

(a)   an amount representing accrued interest on the 1993 Series A Bonds shall be paid to the Corporation;

(b)   $58,025,852 shall be deposited with the Trustee in an account established by the Corporation with the Trustee and designated the 1988 Issue I Refunding Trust Fund.  All deposits in the 1988 Issue I Refunding Trust Fund shall be applied exclusively as provided in this Subsection 3.1(b) and pending such application may be invested in Government or Equivalent Obligations or Student Loans pursuant to written instructions of the Corporation.  All earnings on amounts held in the 1988 Issue I Refunding Trust Fund shall be credited thereto.  Upon receipt of written acknowledgment from the 1988 Issue I Trustee that it has received from the 1988 Issue I Bank the maximum amount that may be needed to redeem all of the 1988

Issue I Bonds in respect of a drawing on the 1988 Issue I Letter of Credit, the Trustee shall immediately pay from the 1988 Issue I Refunding Trust Fund to the 1988 Issue I Bank, as full or partial reimbursement for such drawing in respect of principal of the 1988 Issue I Bonds, the amount held in the 1988 Issue I Refunding Trust Fund. Any excess in the 1988 Issue I Refunding Trust Fund thereafter shall be paid to the Corporation and applied to reimburse it for administrative costs allocable to carrying any Student Loans held in such fund or to pay interest on the Bonds

(c)     $45,274,148 shall be deposited with the Trustee in an account established by the Corporation with the Trustee and designated the 1988 Issue II Refunding Trust Fund. All deposited in the 1988 Issue II Refunding Trust Fund shall be applied exclusively as provided in this Subsection 3.1(c) and pending such application may be invested in Government or Equivalent Obligations or Student Loans pursuant to written instructions of the Corporation. All earnings on amounts held in the 1988 Issue II Refunding Trust Fund shall be credited thereto. Upon receipt of written acknowledgment from the 1988 Issue II Trustee that it has received from the 1988 Issue II Bank the maximum amount that may be needed to redeem all of the 1988 Issue II Bonds in respect of a drawing on the 1988 Issue II Letter of Credit, the Trustee shall immediately pay from the 1988 Issue II Refunding Trust Fund to the 1988 Issue II Bank, as full or partial reimbursement for such drawing in respect of principal of the 1988 Issue II Bonds, the amount held in the 1988 Issue II Refunding Trust Fund. Any excess in the 1988 Issue II Refunding Trust Fund thereafter shall be paid to the Corporation and applied to reimburse it for administrative costs allocable to carrying any Student Loans held in such fund or to pay interest on the Bonds

Section 3.2.   <u>Covenants Regarding Prior Bonds</u>.  The Corporation covenants that the 1988 Issue I Bonds and the 1988 Issue II Bonds are "qualified student loan bonds" within the meaning of IRC Section 144(b)(1)(A). The Corporation further covenants that it will cause the 1988 Issue I Bonds and the 1988 Issue II Bonds to be redeemed in whole on or before June 2, 1993.

## ARTICLE IV

## PAYMENT OF BONDS

Section 4.1.   <u>Payments by the Corporation</u>.  Not later than 11:00 a.m., New York City time, on each date principal of, premium, if any, or interest on the Bonds is due, whether on an interest payment date, at maturity, upon redemption, upon acceleration, or otherwise, the Corporation shall pay to the Trustee the amount due. At any time when any principal of the Bonds is overdue, the Corporation shall also have a continuing obligation to pay to the Trustee an amount equal to interest on the overdue principal, but neither overdue interest nor overdue redemption premiums shall bear interest.

Section 4.2.   Payment by the Trustee.  On any date when principal of, premium, if any, or interest on the Bonds is due, the Trustee shall pay the amounts due to the Bondowners, but only to the extent it has received payment therefor from the Corporation pursuant to Section 4.1.  Payments of interest made by the Trustee on a regular interest payment date shall be sent by check or draft to the last address shown on the books of registry (or at the request of the owner of Bonds of an issue in a principal amount greater than $1,000,000 by wire transfer within the continental United States) to the Bondowner of record as of the fifteenth day of the month preceding the interest payment date (the "Record Date").  Principal or redemption price (including premium, if any, and accrued interest, if the redemption occurs on a date other than an interest payment date) shall be paid to a Bondowner only upon presentation and surrender of the Bond at the principal corporate trust office of the Trustee.

Section 4.3.   Obligation Unconditional.  To the extent permitted by law, the obligation of the Corporation to make payments to the Trustee pursuant to Section 4.1 and to cause the Trustee to make payment on the Bonds pursuant to Section 4.2 shall be absolute and unconditional, shall be binding and enforceable in all circumstances whatsoever, shall not be subject to setoff, recoupment, or counterclaim, and shall be a general obligation of the Corporation to which its full faith and credit are pledged.

Section 4.4.   Unclaimed Moneys.  Except as may otherwise be required by applicable law, in case any moneys deposited with the Trustee for the payment of the principal of, or interest or premium, if any, on any Bond remain unclaimed for three (3) years after such principal, interest or premium has become due and payable, the Trustee may and upon receipt of a written request of the Corporation shall pay over to the Corporation the amount so deposited in immediately available funds, without additional interest, and thereupon the Trustee shall be released from any further liability with respect to the payment of principal, interest or premium and the owner of such Bond shall be entitled (subject to any applicable statute of limitations) to look only to the Corporation as an unsecured creditor for the payment thereof.

## ARTICLE V

## COVENANTS OF THE CORPORATION

Section 5.1.   Tax Covenants.  (a)  The Corporation shall at all times do and perform all acts and things necessary or desirable in order to assure that interest paid on any Tax-Exempt Bonds shall, for the purposes of federal income taxation, be excludable from the gross income of the recipients thereof under IRC Section 103(a), or any successor provisions thereto, including without limitation complying with the applicable provisions of IRC Section 148.

(b)     The Corporation shall not permit at any time or times any of the proceeds of any Tax-Exempt Bonds, or any other assets of the Corporation to be used directly or indirectly to acquire any securities or obligations, the acquisition of which would cause any

Tax-Exempt Bond to be an "arbitrage bond" as defined in IRC Section 148(a) or any successor provision thereto.

Section 5.2.   Plan for Doing Business.   The Corporation shall have obtained approval of a Plan for Doing Business pursuant to §438 of the Higher Education Act in each state where approval of such a plan is required to make all Student Loans owned by the Corporation eligible for Special Allowance Payments.

Section 5.3.   Personnel and Servicing of Programs.   (a)  The Corporation shall at all times appoint, retain, contract with or employ competent personnel for the purpose of carrying out its business and shall establish and enforce reasonable rules, regulations, tests and standards governing the employment of such personnel at reasonable compensation, salaries, fees and charges. All persons employed by the Corporation, and all parties with whom it shall so contract, shall be qualified for their respective positions.

(b)    The Corporation shall duly and properly service all Student Loans owned by it and enforce the payment and collection of all payments of principal and interest or shall cause such servicing to be done by one or more servicers, each evidencing, in the judgment of the Corporation, the capability and experience necessary to adequately service such Student Loans.  Each such servicer shall enter into a servicing agreement providing that:

(1)    such servicer shall at all times remain qualified to act as such pursuant to such standards as the Corporation shall prescribe from time to time and shall determine to be reasonable;

(2)    such servicer shall (either directly or through such subcontractors as the Corporation may approve) at all times service and administer the Corporation's Student Loans pursuant to the standards for servicing provided in the Higher Education Act and set by the applicable guarantor of such loans with respect to the Student Loans owned by the Corporation;

(3)    such servicer shall agree (either directly or through such subcontractors as the Corporation may approve) to maintain servicing facilities that are staffed with trained personnel to adequately service Student Loans in accordance with standards normally employed by private institutional student loan investors, as determined in the Corporation's sole discretion, and shall maintain individual files for each Student Loan serviced pursuant to the servicing agreement and provide regular reports to the Corporation as to collections and delinquencies with respect to all Student Loans serviced by such servicer.

Section 5.4.   Compliance with Conditions Precedent.   Upon the date of issuance of any of the Bonds, all conditions, acts and things required by law or by this Agreement to exist, to have happened or to have been performed precedent to or in the issuance of such Bonds shall exist, have happened and have been performed, or will have happened or been performed, and such Bonds, together with all other indebtedness of the Corporation, shall be within every debt and other limit prescribed by law.

Section 5.5.   General.  The Corporation shall do and perform or cause to be done and performed all acts and things required to be done or performed by or on behalf of the Corporation under the provisions of this Agreement in accordance with the terms of such provisions.

Section 5.6.   Waiver of Laws.  The Corporation shall not at any time insist upon or plead in any manner whatsoever, or claim or take the benefit or advantage of any stay or extension of law now or at any time hereafter in force which may affect the covenants and agreements contained in this Agreement or in the Bonds and all benefit or advantage of any such law or laws is hereby expressly waived by the Corporation.

## ARTICLE VI

## SUPPLEMENTAL AGREEMENTS

Section 6.1.   Supplemental Agreements Effective Upon Filing With the Trustee.  For any one or more of the following purposes and at any time or from time to time, a supplemental Agreement of the Corporation may be adopted, which, upon the filing with the Trustee of a copy thereof certified by an Authorized Officer together with an opinion of Bond Counsel to the effect that such supplemental Agreement will not have an adverse effect on the excludability of interest on any Tax-Exempt Bonds from gross income of the owners thereof for federal income tax purposes, shall be fully effective in accordance with its terms:

(1)     to provide limitations and restrictions in addition to the limitations and restrictions contained in this Agreement on the authentication and delivery of Bonds or the issuance of other evidences of indebtedness;

(2)     to add to the covenants and agreements of the Corporation in this Agreement other covenants and agreements to be observed by the Corporation which are not contrary to or inconsistent with this Agreement as theretofore in effect;

(3)     to add to the limitations and restrictions in this indenture other limitations and restrictions to be observed by the Corporation which are not contrary to or inconsistent with this Agreement as theretofore effect; or

(4)     to surrender any right, power or privilege reserved to or conferred upon the Corporation by the terms of this Agreement, but only if the surrender of such right, power or privilege is not contrary to or inconsistent with covenants and agreements of the Corporation contained in this Agreement; or

Section 6.2.   Supplemental Agreements Effective Upon Consent of Trustee.  (a)  For any one or more of the following purposes and at any time or from time to time, a supplemental Agreement may be adopted, which upon (i) the filing with the Trustee of a copy thereof certified by an Authorized Officer, (ii) the filing by the Corporation of an opinion of Bond Counsel pursuant to Section 6.4(b), and (iii) the filing with the Trustee and

the Corporation of an instrument in writing made by the Trustee consenting thereto, shall be fully effective in accordance with its terms:

(1)  to cure any ambiguity, supply any omission, or cure or correct any defect or inconsistent provision in this Agreement;

(2)  to insert such provisions clarifying matters or questions arising under this Agreement as are necessary or desirable and are not contrary to or inconsistent with this Agreement as theretofore in effect;

(3)  to provide for additional rights, remedies, powers or duties of the Trustee;

(4)  to evidence the appointment of a separate trustee or a co-trustee or the succession of a new Trustee hereunder;

(5)  to make any other change in the Agreement, which, in the judgment of the Trustee, is not to the material prejudice of the Trustee or the Bondowners;

(6)  to make any other change in the Agreement which is necessary, in the opinion of Bond Counsel, to enable the Corporation to comply with the requirements of Section 5.1 hereof; or

(7)  to provide for the issuance of Additional Bonds.

Section 6.3.  <u>Supplemental Agreements Effective Upon Consent of Bondowners</u>.  At any time or from time to time, for any purpose a supplemental Agreement may be adopted subject to consent by Bondowners in accordance with and subject to the provisions of Article VII.  Any such supplemental Agreement shall become fully effective in accordance with its terms upon the filing with the Trustee of a copy thereof certified by an Authorized Officer together with an opinion of Bond Counsel pursuant to Section 6.4(b) and upon compliance with the provisions of Article VII.

Section 6.4.  <u>General Provisions</u>.  (a)  This Agreement shall not be modified or amended in any respect except as provided in and in accordance with and subject to the provisions of this Article and Article VII.  Nothing in this Article or Article VII shall affect or limit the right or obligation of the Corporation to execute and deliver to the Trustee any instrument which is to be delivered to the Trustee pursuant to this Agreement.

(b)     The copy of every supplemental Agreement filed with the Trustee shall be accompanied by a Bond Counsel's opinion stating that such supplemental Agreement has been duly and lawfully adopted in accordance with the provisions of this Agreement, is authorized or permitted by this Agreement, is valid and binding upon the Corporation and will have no adverse impact on the excludability from Bondowners' gross income for federal income tax purposes of the interest on any Tax-Exempt Bonds.

(c)     The Trustee is hereby authorized to accept the delivery of a copy of any supplemental Agreement referred to and permitted or authorized by Section 6.1, 6.2 or 6.3

and to make all further agreements and stipulations which may be therein contained, and the Trustee, in taking such action, shall be fully protected in relying on an opinion of counsel (which may be a Bond Counsel's opinion) that such Supplemental Agreement is authorized or permitted by the provisions of this Agreement.

## ARTICLE VII

## AMENDMENTS

Section 7.1.   <u>Mailing of Notice of Amendment</u>.  Any provision in this Article for the mailing of a notice or other paper to Bondowners shall be fully complied with if it is mailed postage prepaid (i) to the owner of each of the Bonds then Outstanding at his address, appearing upon the registry books of the Corporation and (ii) to the Trustee.

Section 7.2.   <u>Powers of Amendment</u>.  Any modification of or amendment to this Agreement and of the rights and obligations of the Corporation and of the owners of the Bonds hereunder, in any particular, may be made by a supplemental Agreement, but only, in the event such supplemental Agreement shall be adopted pursuant to Section 6.3, subject to the provision of Section 6.4 hereof, with the written consent given as provided in Section 7.3 of the owners of at least two-thirds (2/3) in principal amount of the Bonds Outstanding at the time such consent is given.  No such modification or amendment shall permit a change in the terms of redemption or maturity of the principal of any Outstanding Bond or of any installment of interest thereon or a reduction in the principal amount or the redemption price thereof or in the rate of interest thereon without the consent of the owner of such Bond, or shall reduce the percentages or otherwise affect the classes of Bonds, the consent of the owners of which is required to effect any such modification or amendment.

Section 7.3.   <u>Consent of Bondowners</u>.  (a)  A copy of any supplemental Agreement making a modification or amendment which is not permitted by the provisions of Section 6.1 or 6.2 (or brief summary thereof or reference thereto in form approved by the Trustee), together with a request to Bondowners for their consent thereto in form satisfactory to the Trustee, shall be mailed by the Corporation to each Bondowner.  Such supplemental Agreement shall not be effective unless and until (i) there shall have been filed with the Trustee the written consents of owners of the percentages of Bonds specified in Section 9.2 and (ii) a notice shall have been mailed as hereinafter provided in this section.

(b)      The consent of a Bondowner to any modification or amendment shall be effective only if accompanied by proof of the holding of the Bonds with respect to which such consent is given at the date of such consent, which proof shall be such as is permitted by Section 9.11.  A certificate of the Trustee filed with the Trustee that it has examined such proof and that such proof is sufficient in accordance with such Section 9.11 shall be conclusive that the consents have been given by the Bondowners described in such certificate of the Trustee.  Any such consent shall be binding upon the owner of the Bonds giving such consent and upon any subsequent owner of such Bonds and of any Bonds issued in exchange therefor (whether or not such subsequent Bondowner thereof has notice thereof) unless such consent is revoked in writing by the owner of such Bonds giving such consent or a

subsequent owner thereof by filing with the Trustee, prior to the time when the written statement of the Trustee hereinafter provided for in this section is filed. The fact that a consent has not been revoked may likewise be proved by a certificate of the Trustee filed with the Trustee to the effect that no revocation thereof is on file with the Trustee.

(c)     At any time after the owners of the required percentages of Bonds shall have filed their consents to the supplemental Agreement, the Trustee shall make and file with the Corporation and the Trustee a written statement that the owners of such required percentages of Bonds have filed such consents. Such written statements shall be conclusive that such consents have been so filed. At any time thereafter, notice, stating in substance that the supplemental Agreement (which may be referred to as a supplemental Agreement adopted by the Corporation on a stated date, a copy of which is on file with the Trustee) has been consented to by the owners of the required percentages of Bonds and will be effective as provided in this section, may be given to Bondowners by the Corporation by mailing such notice to the Bondowners. The Corporation shall file with the Trustee proof of the mailing of such notice. A record, consisting of the papers required or permitted by this section to be filed with the Trustee, shall be proof of the matters therein stated. Such supplemental Agreement making such amendment or modification shall be deemed conclusively binding upon the Corporation, the Trustee and the Bondowners at the expiration of forty days after the filing with the Trustee of the proof of the mailing of the notice of such consent.

Section 7.4.   Exclusion of Bonds.  Bonds owned or held by or for the account of the Corporation shall not be counted for the purpose of consent or other action or any calculation of Outstanding Bonds provided for in this Article, and the Corporation shall not be entitled with respect to such Bonds to give any consent or take any other action provided for in this Article. At the time of any consent or other action taken under this Article, the Corporation shall furnish to the Trustee a certificate of an Authorized Officer, upon which the Trustee may rely, describing all Bonds so to be excluded.

## ARTICLE VIII

## DEFAULTS AND REMEDIES

Section 8.1.   Events of Default.  Each of the following events is an "Event of Default":

(1)     payment of the principal or redemption premium of or interest on any Bond, either at maturity, on any redemption date, on any interest payment date or otherwise, shall not be made when and as the same shall become due; or

(2)     the Corporation shall fail or refuse to comply with the provisions of this Agreement, or shall default in the performance or observance of any of the covenants, agreements or conditions on its part contained herein or in the Bonds, and such failure, refusal or default shall continue for a period of forty-five (45) days after written notice thereof by the Trustee or the owners of not less than twenty-five percent (25%) in the aggregate of the Outstanding Bonds; or

(3)     an order or decree shall be entered, with the consent or acquiescence of the Corporation, appointing a receiver or other custodian for the assets of the Corporation, or approving a petition filed against the Corporation seeking reorganization or liquidation of the Corporation under the federal bankruptcy laws or any other similar state or federal law, or if any such order or decree, having been entered without the consent or acquiescence of the Corporation, shall not be vacated or discharged or stayed on appeal within ninety (90) days after the entry thereof; or any proceeding shall be instituted, with the consent or acquiescence of the Corporation, for the purpose of effecting a composition or other arrangement between the Corporation and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or state statute; or if the Corporation makes an assignment for the benefit of its creditors, or consents to the appointment of a receiver, trustee or other custodian for itself or for the whole or any part of its assets; or if (i) the Corporation is adjudged insolvent by a court of competent jurisdiction, or (ii) an order, judgment or decree be entered by any court of competent jurisdiction appointing, without the consent of the Corporation, a receiver, trustee or other custodian of the Corporation or of the whole or any substantial part of its property and any of the aforesaid adjudications, orders, judgments or decrees shall not be vacated or set aside or stayed within ninety (90) days from the date of entry thereof; or if the Corporation shall file a petition or answer seeking reorganization or any arrangement under the federal bankruptcy laws or any other applicable state or federal law; or if, under the provisions of any other law for the relief or aid of debtors, any court of competent jurisdiction shall assume custody or control of the Corporation or of the whole or any substantial part of its property, and such custody or control shall not be terminated within ninety (90) days from the date of assumption of such custody or control; or

(4)     A breach shall occur (and continue beyond any applicable grace period) with respect to a payment of indebtedness by the Corporation of for borrowed money with respect to loans exceeding $1,000,000, or with respect to the performance of any agreement securing such indebtedness or pursuant to which the same was issued or incurred, or an event shall occur with respect to provisions of any such agreement relating to matters of the character referred to in this section, so that a holder or holders of such indebtedness or a trustee or trustees under any such agreement accelerates or is empowered to accelerate any such indebtedness; but an Event of Default shall not be deemed to be in existence or to be continuing under this Paragraph (4) if (A) the Corporation is in good faith contesting the existence of such breach or event and if such acceleration is being stayed by judicial proceedings, (B) the power of acceleration is not exercised and it ceases to be in effect, or (C) such breach or event is remedied and the acceleration, if any, is wholly annulled.  The Corporation shall notify the Trustee of any such breach or event immediately upon the Corporation's becoming aware of its occurrence and shall from time to time furnish such information as the Trustee may reasonably request for the purpose of determining whether a breach or event described in this Paragraph (4) has occurred and whether such power of acceleration has been exercised or continues to be in effect.

Section 8.2.   Acceleration. Upon the occurrence of an Event of Default described in Clause (1), (3), or (4) of Section 8.1, so long as such Event of Default shall not have been remedied, the Trustee may, or upon written request of the owners of not less than two-thirds (2/3) in aggregate principal amount of the Bonds then Outstanding shall, by written notice to the Corporation, declare the principal of all the Bonds then Outstanding and the interest accrued thereon to be due and payable immediately.   Upon the occurrence of an Event of Default described in Clause (2) of Section 8.1, so long as such Event of Default shall not have been remedied, the Trustee may, or upon written request of the owners of all Bonds then Outstanding, by written notice to the Corporation, declare the principal of all the Bonds then Outstanding and the interest accrued thereon to be due and payable immediately.

Upon any such declaration the principal of and interest on the Bonds Outstanding shall become and be due and payable on such date, anything contained in this Agreement or in any of the Bonds to the contrary notwithstanding.   The right of the Trustee to make any such declaration as aforesaid, however, is subject to the condition that if, at any time after such declaration, but before any judgment or decree for the payment of moneys due shall have been obtained or entered unless the same has been discharged, all overdue installments of interest upon the Bonds, together with the reasonable and proper charges, expenses and liabilities of the Trustee and the Bondowners and their respective agents and attorneys and all other sums then payable by the Corporation under this Agreement (except the principal of and interest accrued since the next preceding interest payment date on the Bonds due and payable solely by virtue of such declaration) shall either be paid by or for the account of the Corporation or provision satisfactory to the Trustee shall be made for such payment, and all defaults under the Bonds or under this Agreement (other than the payment of principal and interest due and payable solely by reason of such declaration) shall be cured to the satisfaction of the Trustee or provision deemed by the Trustee to be adequate shall be made therefore, or, to the extent any of such defaults cannot be cured, such defaults shall have been waived by the owners of not less than two-thirds (2/3) in aggregate principal amount of the Bonds then Outstanding, by written notice to the Corporation and to the Trustee, may rescind such declaration with respect to the Bonds and annul such Event of Default with respect to the Bonds, or, if the Trustee shall have acted with respect to the Bonds without a written request from the owners of Bonds as provided for herein, and if there shall not have been theretofore delivered to the Trustee written notice to the contrary by the Bondowners as provided herein, then the Trustee may, by written notice to the Corporation, annul such declaration and any such default with respect to the Bonds and its consequences shall be annulled, provided that no such rescission and annulment shall extent to or affect any subsequent Event of Default or impair or exhaust any right or power consequent thereon.

Upon any declaration of acceleration of the Bonds hereunder, the Trustee shall give notice of such declaration and its consequences to Bondowners.   Notice of such acceleration having been given as aforesaid, anything contained in this Agreement or in the Bonds to the contrary notwithstanding, interest shall cease to accrue on the Bonds from and after the date set forth in such notice (which shall be not more than five (5) days from the date of such declaration).

Section 8.3.   Application of Moneys.  In the event that an Event of Default shall have occurred and be continuing and at any time the moneys held by the Trustee shall be insufficient for the payment of the principal of and interest then due on the Bonds such moneys shall be applied first to the payment of the reasonable and proper fees and expenses of the Trustee and of such other expenses as are necessary in the judgment of the Trustee to protect the interests of the Bondowners and thereafter as follows:

FIRST, to the payment to the persons entitled thereto of all installments of interest then due (including any interest on overdue principal at the rate borne by the respective Bonds) in the order that such installments of interest shall have become due, and, if the amounts available shall not be sufficient to pay in full all installments of interest coming due on the same date, then to the payment thereof ratably, according to the amount due thereon, to the persons entitled thereto, without any discrimination or preference, and

SECOND, to the payment to the persons entitled thereto of the unpaid principal due on the Bonds at the time of such payment ratably, according to the total amount of principal due, to the persons entitled thereto without any discrimination or preference, and

THIRD, to the payment to the persons entitled thereto of any unpaid redemption premium due on the Bonds at the time of such payment ratably, according to the total amount of such premium due, to the persons entitled thereto without any discrimination or preference.

Whenever moneys are to be applied pursuant to the foregoing paragraphs, such moneys shall be applied at such times, and from time to time, as the Trustee in its sole discretion shall determine, having due regard to the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future.  Whenever the Trustee shall exercise such discretion, it shall fix the date upon which application is to be made, and upon such date interest on the amounts of principal to be paid on such date shall cease to accrue on the affected Bonds.  The Trustee shall give such notice as it may deem appropriate of the fixing of any such date and shall not be required to make payment to the owner of any unpaid affected Bond unless such Bond is presented for appropriate endorsement.

Section 8.4.   Suits at Law or in Equity; Direction of Action by Bondowners.  If an Event of Default shall occur and shall not have been remedied, then and in every such case, the Trustee, either in its own name or as trustee of an express trust, or as attorney-in-fact for the Bondowners or in any one or more of such capacities by its agents and attorneys, shall be entitled and empowered to proceed forthwith to institute such suits, actions and proceedings at law or in equity for the collection of all sums due in connection with the Bonds and to protect and enforce its rights and the rights of the Bondowners under this Agreement for the specific performance of any covenant herein contained, or in aid of the execution of any power herein granted, or for an accounting as trustee of an express trust, or in the enforcement of any legal or equitable right as the Trustee, being advised by counsel, shall deem most effectual to enforce any of its rights, or to perform any of its duties under this

Agreement.  The Trustee shall be entitled and empowered either in its own name or as a trustee of an express trust, or as attorney-in-fact for the Bondowners, or in any one or more of such capacities, to file such proof of debt, claim, petition or other document as may be necessary or advisable in order to have the claims of the Trustee and of the Bondowners allowed in any equity, receivership, insolvency, bankruptcy, liquidation, readjustment, reorganization or other similar proceedings.  For this purpose the Trustee is hereby irrevocably appointed the true and lawful attorney-in-fact of the respective Bondowners (and the successive Bondowners by taking and holding the same shall be conclusively deemed to have so appointed the Trustee) with authority to make and file in the respective names of the Bondowners any such proof of debt, amendment of proof of debt, claim, petition or other document in any such proceedings, and to receive payment of any sums becoming distributable on account thereof, and to execute any such other papers and documents and to do and perform any and all acts and things for and on behalf of the Bondowners as may be necessary or advisable in the opinion of the Trustee in order to have the respective claims of the Trustee and of the Bondowners allowed in any such proceedings and to receive payment of and on account of such claims.

All rights of action under this Agreement may be enforced by the Trustee without the possession of any of the Bonds or the production thereof in any suit, action or other proceeding.

The Trustee, at the request of the Owners of not less than two-thirds (2/3) in aggregate principal amount of the Bonds then Outstanding, and upon being furnished with reasonable security and indemnity, shall take such steps and institute such suits, actions or proceedings for the protection and enforcement of the rights of the Bondowners, as the case may be, to collect any amount due and owing from the Corporation or by injunction or other appropriate proceeding in law or in equity to obtain other appropriate relief.

Section 8.5.   Suits by Individual Bondowners.  Except as otherwise specifically provided in this Section 8.5, no Bondowner shall have any right to institute any suit, action or proceedings in equity or at law for the enforcement of any provision of, or the execution of any trust or for any remedy under, this Agreement unless (i) such Bondowner previously shall have given to the Trustee notice of the Event of Default on account of which such suit, action or proceedings is to be instituted, (ii) the owners of not less than two-thirds (2/3) in aggregate principal amount of the Bonds then Outstanding, shall have filed a written request with the Trustee after the right to exercise such powers or right of action, as the case may be, shall have accrued that such suit, action or proceeding be instituted, (iii) there shall have been offered to the Trustee reasonable security and indemnity against the costs, expenses and liability to be incurred therein or thereby, (iv) the Trustee for a period of thirty (30) days after the receipt by it of such notice, request and offer of indemnity shall have failed to proceed to exercise such powers or to institute any such action, suit or proceedings, or the Trustee shall at any time after such receipt have stated in writing that it shall not so proceed, and (v) no direction inconsistent with such written request shall have been given to the Trustee pursuant to Section 8.4 hereof; it being understood and intended that, except as otherwise above provided, no one or more Bondowners shall have any right in any manner whatsoever by its or their action to enforce any right under this Agreement except in the

manner herein provided and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided for the benefit of Bondowners.

Notwithstanding any other provision of this Agreement, the right of any Bondowner to receive payment of the principal of, premium, if any, and interest on its Bond, on or after the respective due dates expressed in such Bond, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Bondowner.

Section 8.6.   Remedies Not Exclusive.   No remedy by the terms of this Agreement conferred upon or reserved to the Trustee or the Bondowners is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement or existing at law or in equity or by statute on or after the date of this Agreement.

Section 8.7.   Waivers of Default.   No delay or omission of the Trustee or of any Bondowner to exercise any right or power arising upon the happening of an Event of Default shall impair any right or power or shall be construed to be a waiver of any such Event of Default or to be an acquiescence therein and every power and remedy given by this Article VIII to the Trustee or to the Bondowners may be exercised from time to time and as often as may be deemed necessary by the Trustee or by such Bondowners.

Prior to a declaration accelerating the maturity of the Bonds as provided in Section 8.2, the Trustee may at its discretion, and shall upon the written request of the owners of not less than two-thirds (2/3) in principal amount of the Bonds then Outstanding, or their attorney-in-fact duly authorized, waive any past failure under this Agreement and its consequences with respect to the Bonds.  No such waiver shall extend to any subsequent or other failure or impair any right consequent thereon.

# ARTICLE IX

# CONCERNING THE TRUSTEE

Section 9.1.   Responsibility of Trustee.   The recitals of fact herein and in the Bonds contained shall be taken as the statements of the Corporation and the Trustee assumes no responsibility for the correctness of the same.  The Trustee makes no representations as to the validity or sufficiency of this Agreement or of any Bonds issued hereunder or in respect of the security afforded by this Agreement, and the Trustee shall incur no responsibility in respect thereof.  The Trustee shall, however, be responsible for its representations contained in its certificate of authentication on the Bonds.  The Trustee shall not be under any responsibility or duty with respect to the issuance of the Bonds for value or the application of the proceeds thereof or the application of any moneys paid to the Corporation.  The Trustee shall not be under any obligation or duty to perform any act which would involve it in expense or liability or to institute or defend any suit in respect hereof, or to advance any of its own moneys, unless properly indemnified.  The Trustee shall not be liable in connection with the performance of its duties hereunder except for its own negligence or default.

Section 9.2.   <u>Evidence on Which Trustee May Act</u>.  The Trustee shall be protected in acting upon any notice, resolution, request, consent, order, certificate, report, opinion, bond or other paper or document believed by it to be genuine, and to have been signed or presented by the proper party or parties.  The Trustee may consult with counsel, who may be counsel to the Corporation, and the opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accordance therewith. Whenever the Trustee shall deem it necessary or desirable that a matter be proved and established prior to taking or suffering any action hereunder, such matter (unless other evidence of respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by an Authorized Officer, and such certificate shall be full warrant for any action taken or suffered in good faith under the provisions of this Agreement upon the faith thereof, but in its sole discretion the Trustee may in lieu thereof accept other evidence of such fact or matter or may require such further or additional evidence as to it may seem reasonable. Neither the Trustee nor any successor Trustee shall be liable to the Corporation, the holders of any of the Bonds or any other person for any act or omission done or omitted to be done by such Trustee in reliance upon any instruction, direction or certification received by the Trustee pursuant to this Agreement or for any act or omission done or omitted in good faith and without willful or reckless misconduct.  Except as otherwise expressly provided herein, any request, order, notice or other direction required or permitted to be furnished pursuant to any provision hereof by the Corporation to the Trustee shall be sufficiently executed if executed in the name of the Corporation by an Authorized Officer.

Section 9.3.   <u>Compensation; Indemnity</u>.  The Corporation shall pay to the Trustee from time to time reasonable compensation for all services rendered under this Agreement, and also all reasonable expenses, charges, counsel fees (whether or not litigation ensued and, if so, fees on trial and any appeal therefrom) and other disbursements, including those of its attorneys, agents and employees, incurred in and about the performance of their powers and duties under this Agreement.  The Corporation further agrees to indemnify and save the Trustee harmless against any liabilities which it may incur in the exercise and performance of its powers and duties hereunder, and which are not due to its negligence or default.

Section 9.4.   <u>Permitted Acts and Functions</u>.  The Trustee may become the owner of any Bonds, with the same rights it would have if it were not the Trustee.  The Trustee may act as and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of Bondowners or to effect or aid in any reorganization growing out of the enforcement of the Bonds or this Agreement, whether or not any such committee shall represent the owners of a majority in principal amount of the Bonds then Outstanding.

Section 9.5.   <u>Resignation of Trustee</u>.  The Trustee may at any time resign and be discharged of the duties and obligations created by this Agreement by giving not less than sixty days' written notice to the Corporation and to each of the Bondowners by mail postage prepaid to his address appearing upon the registry books of the Corporation, specifying the date when such resignation shall take effect, and such resignation shall take effect upon the day specified in such notice unless previously a successor shall have been appointed, as provided in Section 9.7, in which event such resignation shall take effect immediately on the

appointment of such successor; provided, however, that no such resignation shall be effective unless a successor trustee shall have been appointed and shall have accepted the trusts herein created.

Section 9.6.   Removal of Trustee.  The Trustee shall be removed by the Corporation if at any time so requested by an instrument or concurrent instruments in writing, filed with the Trustee and the Corporation and signed by the owners of a majority in principal amount of the Bonds then Outstanding or their attorney in fact duly authorized, excluding any Bonds held by or for the account of the Corporation.

Section 9.7.   Appointment of Successor Trustee.  (a)  In case at any time the Trustee shall resign or shall be removed or shall become incapable of acting, or shall be adjudged a bankrupt or insolvent, or if a receiver, liquidator or conservator of the Trustee, or of its property, shall be appointed, or if any public officer shall take charge or control of the Trustee, or of its property or affairs, the Corporation covenants and agrees that it will appoint a successor Trustee.  The Corporation shall mail notice of any such appointment made by it within twenty (20) days after such appointment to each of the Bondowners postage prepaid to his address appearing upon the registry books of the Corporation.

(b)   If in a proper case no appointment of a successor Trustee shall be made pursuant to the foregoing provisions of this section within forty-five (45) days after the Trustee shall have given to the Corporation written notice, as provided in section 9.5, or after a vacancy in the office of the Trustee shall have occurred by reason of its inability to act, the Trustee or any Bondowner may apply to any court of competent jurisdiction to appoint a successor Trustee.  Said court may thereupon, after such notice, if any, as such court may deem proper and prescribe, appoint a successor Trustee.

(c)   Any Trustee appointed under the provisions of this Section in succession to the Trustee shall be a trust company or bank having the powers of a trust company within or outside the Commonwealth, having capital, surplus and undivided profits aggregating at least $75,000,000, if there be such a trust company or bank willing and able to accept the office on reasonable and customary terms and authorized by law to perform all the duties imposed upon it by this Agreement.

Section 9.8.   Transfer of Rights to Successor Trustee.  Any successor Trustee appointed under this Agreement shall execute, acknowledge and deliver to its predecessor Trustee, and also to the Corporation, an instrument accepting such appointment, and thereupon such successor Trustee, without any further act, deed or conveyance, shall become fully vested with all moneys, estates, properties, rights, powers, duties and obligations of such predecessor Trustee, with like effect as if originally named as Trustee, but the Trustee ceasing to act shall nevertheless, on the request of the Corporation or of its successor Trustee, execute, acknowledge and deliver such instruments of conveyance and further assurance and do such other things as may reasonably be required for more fully and certainly vesting and confirming in such successor Trustee all the right, title and interest of the predecessor Trustee in and to any property held by it under this Agreement, and shall pay over, assign and deliver to the successor Trustee any money or other property subject to the trusts and conditions herein set forth.  Should any deed, conveyance or instrument in

writing from the Corporation be required by such successor Trustee for more fully and certainly vesting in and confirming to such successor Trustee any such estates, rights, powers and duties, any and all such deeds, conveyances and instruments in writing shall, on request and so far as may be authorized by law, be executed, acknowledged and delivered by the Corporation.  Upon the effectiveness of the resignation or removal of the Trustee, such Trustee's authority to act pursuant to this Agreement shall terminate and such Trustee shall have no further responsibility or liability whatsoever as Trustee for performance of this Agreement.

Section 9.9.   Merger or Consolidation.  Any company into which the Trustee may be merged or converted or with which it may be consolidated or any company resulting from any merger, conversion or consolidation to which it shall be a party or any company to which the Trustee may sell or transfer all or substantially all of its corporate trust business, provided such company shall be a trust company or bank which is qualified to be a successor under Section 9.7 and shall be authorized by law to perform all the duties imposed upon it by this Agreement, shall be the successor Trustee without the execution or filing of any paper or the performance of any further act, anything herein to the contrary notwithstanding.

Section 9.10.   Adoption of Authentication.  In case any of the Bonds contemplated to be issued under this Agreement shall have been authenticated but not delivered, any successor Trustee may adopt the certificate of authentication of any predecessor Trustee so authenticating such Bonds and deliver such Bonds so authenticated, and in case any of the said Bonds shall not have been authenticated, any successor Trustee may authenticate such Bonds in the name of the predecessor Trustee or in the name of the successor Trustee, and in all such cases such certificate shall have the full force provided anywhere in said Bonds or in this Agreement.

Section 9.11.   Evidence of Signatures of Bondowners and Ownership of Bonds.  Any request, consent or other instrument which this Agreement may require or permit to be signed and executed by the Bondowners may be in one or more instruments of similar tenor, and shall be signed or executed by such Bondowners in person or by their attorneys appointed in writing.  Proof of the execution of any such instrument, or of any instrument appointing any such attorney shall be sufficient for any purpose of this Agreement (except as otherwise herein expressly provided) if made in the following manner, but the Trustee may nevertheless in its sole discretion require further or other proof in cases where it deems the same desirable.  The fact and date of the execution by any Bondowner or his attorney of such instrument may be proved by a signature guaranty signed by an officer of a bank or trust company, financial institution or other member of the National Association of Securities Dealers, Inc. ("NASD") satisfactory to the Trustee, or by a certificate, which need not be acknowledged or verified, of any such officer or of any notary public or other officer authorized to take acknowledgements of deeds to be recorded in the state in which he purports to act, that the person signing such request or other instrument acknowledged to him the execution thereof, or by an affidavit of a witness of such execution, duly sworn to before such notary public or other officer.  The authority of the person or persons executing any such instrument on behalf of a corporate Bondowners may be established without further proof if such instrument is signed by a person purporting to be the president or vice president

of such corporation with a corporate seal affixed and attested by a person purporting to be its secretary or an assistant secretary.

The ownership of Bonds and the amount, numbers and other identification, and date of holding the same shall be proven by the registration books of the Corporation.

Any request, consent or vote of the owner of any Bond shall bind all future owners of such Bond in respect of anything done or suffered to be done by the Corporation or the Trustee in accordance therewith.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

Section 10.1. <u>Conflict</u>.  All indentures or parts of indentures or other proceedings of the Corporation in conflict herewith be and the same are repealed insofar as such conflict exists.

Section 10.2. <u>Governing Law</u>.  This instrument shall be governed by the law of The Commonwealth of Massachusetts.

Section 10.3. <u>Effective Date</u>.  This Agreement shall take effect as of the day and year first above written.

IN WITNESS WHEREOF, The New England Education Loan Marketing Corporation has caused these presents to be signed under seal in its name and behalf by its Treasurer and attested by its Clerk and to evidence its acceptance of the Trusts hereby created The First National Bank of Boston has caused these presents to be signed under seal in its name and behalf by, its duly authorized officer, all as of the day and year first above written.

(SEAL)

THE NEW ENGLAND EDUCATION LOAN
MARKETING CORPORATION

By_____
      Treasurer

Attest:

Clerk

(SEAL)

THE FIRST NATIONAL BANK OF BOSTON,
AS TRUSTEE

By_____

Title:_____