**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| NAVIENT SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:21-cv-324-TSE-IDD |
| | ) | |
| DEPARTMENT OF EDUCATION and | ) | |
| DR. MIGUEL CARDONA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# EXHIBIT 14
# Letter from Robert Evans, former Director of Policy and Development, U.S. Department of Education, to Sheila Ryan-Macie
# AR 1477-1478



**The Evans Consulting Group, Inc.**
202-465-4766
888-454-3101
FAX: 443-638-0238
www.evansconsulting.org

March 18, 2014

Sheila M. Ryan-Macie
Senior Vice President, Operations Administration
Sallie Mae
300 Continental Drive
Newark, DE 19713

Dear Sheila:

I am writing about your request for background information on a Dear Colleague Letter (DCL) issued by the U.S. Department of Education in November of 1993. That DCL addressed changes made by the Omnibus Reconciliation Act (OBRA) of 1993 and, in particular, changes to the payment of special allowance on loans financed with tax-exempt financings. At the time the letter was issued, I was the director of policy and development for the Department.

Summary of Events Taking Place

I recall that 1993 was a very active period within the policy division at the Department. In July of 1992, the Higher Education Act was reauthorized and the Department was required to establish committees to develop proposed regulations to address the changes in law. In addition, in December of 1992, the Department issued final regulations implementing the 1986 reauthorization as well as other changes in law. The issuance of the 1992 regulations following the 1992 reauthorization created some confusion for the higher education community. Given the number of questions that were being asking of the Department, the Secretary made a decision to delay the enforcement of the regulations. The policy division was directed to gather concerns and questions from the community, and thereafter provide clarifying guidance. A third event during this period was the Omnibus Reconciliation Act of 1993, a change in law which also required administrative guidance to be issued by the Department.

Due to these various events, in the course of 1993 there were numerous meetings with the higher education community – as I recall we met monthly over the course of five to six months. As chairperson of the National Council Higher Education Loan Programs (NCHELP)  Regulations Committee and an NCHELP designee for negotiated rulemaking, you were actively engaged in the policy discussions and, in particular, on matters relating to the unique billing requirements for tax-exempt financing. I very much recall you being the industry expert on the topic.

Department Policy Changes

As I recall, the Department's final regulations changed its historical policy on special allowance requirements for tax-exempt financing. This topic was one of the areas of confusion created by the 1992 regulations. The confusion was not created by the then-recent change in law, but rather was due to

changes in regulations which were not discussed in any commentary to the final regulation. I recall you making numerous requests for clarification on this provision as it substantially changed the requirements for entities subject to these rules. You were also vocal in your objection to the policy change given its potential to be costly for nonprofit entities or the government, depending on swings in interest rates.

In the midst of these discussions, OBRA 1993 was enacted. That law also changed the requirements for special allowance for tax-exempt loans. In particular, the new law eliminated the unique special allowance provisions for loans financed with newly issued tax-exempt obligations; such loans would be billed like others loans. Again, I recall you asking for specific guidance to ensure that entities established the correct billing rules for special allowance.

<u>The November 1993 DCL</u>

While I don't recall the specific questions you raised during this time period, I do recall (as noted above) your numerous requests for guidance to ensure accurate billing. I recently reviewed the referenced Dear Colleague Letter and have the following observations:

- Entities were engaging in different types of financing programs and were no longer relying solely on secured tax-exempt bond financings.
- The inclusion of the phrase "in whole or part" was consistent with the policy direction being taken at the time by the Department to expand the one-half SAP limitations.
- The DCL did not include the term "In general" or a similar phrase, which we used at the Department to create policy flexibility. This indicates to me that the Department wanted a bright line in this policy decision – if a loan was financed in part with tax-exempt obligations, it was subject to the restriction.
- It's highly probable the words "in whole or part" were inserted to address a specific question or activity the Department was seeking to address – I don't believe we would have inserted the phrase if, in fact, it had no meaning.

Please let me know if I can be of further assistance.

Sincerely yours,

**Robert W. (Bob) Evans**
**President & CEO**