**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| NAVIENT SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 1:21-cv-324-TSE-IDD |
| | ) |
| DEPARTMENT OF EDUCATION and | ) |
| DR. MIGUEL CARDONA, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT 15
# Affidavit of John (Jack) Remondi
# AR 1479-1481

*In re Audit Control No. ED-OIG/A03I0006*

*Special Allowance Payments to Navient's Subsidiary, Nellie Mae, for Loans Funded by Tax Exempt Obligations*

## AFFIDAVIT OF JOHN (JACK) REMONDI

JOHN (JACK) REMONDI, being duly sworn, deposes and says:

1. I am President and Chief Executive Office of Navient Corporation (formerly known as Sallie Mae, "Navient"). From 1988 to 2000, I was employed by Nellie Mae, Inc. ("Nellie Mae"), first in the position of Treasurer, then as Treasurer and Chief Financial Officer. In 2000, upon Nellie Mae's acquisition by Sallie Mae, I became an employee of Sallie Mae and its Treasurer. I served in that position until August, 2005 at which time I left the Company. I became re-employed by Sallie Mae in 2008, serving as Chief Financial Officer and then, in 2011, as President and Chief Operating Officer until 2013 when I assumed my current position.

2. I am submitting this Affidavit in connection with Navient's request for review of the final audit determination ("FAD") dated as of September 25, 2013, of the U.S. Department of Education ("Department"), Federal Student Aid ("FSA"), concerning the final audit report issued to Sallie Mae, Inc. by the Department's Office of Inspector General ("OIG") on August 3, 2009.

3. I certify that, based on my personal knowledge of and participation in the activities detailed below, the below statements are true and accurate to the best of my

recollection. Further, I am prepared to make such statements and certification if called upon to do so in a court of law or other administrative proceeding.

4. In 1993, when the 1993 Trust bonds that are the subject of the FAD were issued, I was Nellie Mae's Treasurer and Chief Financial Officer. In early 1993, I asked Sheila Ryan-Macie (Nellie Mae's Director of Strategy and Development at the time, and its primary liaison to the Department) to solicit clarification from the Department as to how the special allowance billing rules would apply to loans in the 1993 Trust, which was the first unsecured tax-exempt financing completed by Nellie Mae. This clarification was necessary not only because of the unique character of the 1993 financing, but also because the Department had recently promulgated new special allowance regulations in December of 1992 that appeared to change the Department's prior policy on billing for loans financed with tax-exempt obligations and we were not sure how the changes would apply to the 1993 financing.

5. While I did not participate directly in any conversations with the Department, I believe that the phrase "in whole or part" was included in a Dear Colleague Letter based on Nellie Mae's inquiry to clarify the billing rules for loans financed by multiple sources of financing or with proceeds pooled, such as the 1993 Trust, because of the timing of Sheila Ryan-Macie's conversations with the Department and the publication of the 1993 DCL shortly after those conversations. Based on the guidance in the 1993 Dear Colleague Letter, Nellie Mae established its billing procedures for loans financed by the Trust. We understood that the procedures could have two potential outcomes – in high interest rate environments the ½ SAP restrictions would apply to all the loans and in low environments the 9.5% minimum yield would apply to all the loans.

6. Upon receipt of the FAD, I asked Sheila Ryan-Macie, my Chief of Staff and Senior Vice President, Operations Administration to lead Navient's review of the FAD given her expertise on the items included on the letter. I asked Sheila to secure copies of the guidance where the phrase *in whole or part* was included, as I specifically recalled that phrase as being important to Nellie Mae's billing practices with respect to the 1993 Trust bonds.

7. To the best of my recollection, when Bond 1993B was issued, a new sub-pool was created within the 1993 Trust loan pool into which the 1993B proceeds and receipts were deposited, along with those of subsequent series of the 1993 Bonds. No provision of the indenture governing the 1993 Bonds or any related agreement would have required the maintenance of separate pools for these bond proceeds and receipts. The separate sub-pool was maintained for historic administrative reasons relating to the bonds that Bond 1993B and later series refinanced.

FURTHER AFFIANT SAYETH NOT.

John (Jack) Remondi

Sworn to before me this 22st day of September, 2016:



Kathleen Marie Miller

3
1481